UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

SEP 0 7 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-510-GWU

LISA PRUITT,                                                      PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI). The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled. If no, proceed to Step 2.
     See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)? If yes, proceed to Step 3. If no, the
     claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities? If yes, proceed to
     Step 4. If no, the claimant is not disabled. See 20 C.F.R.
     404.1520(c), 404.1521, 416.920(c), 461.921.

1

Pruitt

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled. If no, proceed to Step 6.  See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  See 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Pruitt

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

Pruitt

> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Pruitt

or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id</u>. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Pruitt

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

Pruitt

may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d

279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the

Commissioner's decision may be produced through reliance on this expert testimony

only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments.   <u>Varley   v. Secretary of Health and Human</u>

<u>Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that the plaintiff was status post two

back surgeries with mild right leg radiculopathy. (Tr. 19). Pruitt, a younger individual

with no past relevant work, was deemed capable of performing a significant number

of light level jobs in the economy. (Tr. 18-19).

In determining the residual functional capacity for the plaintiff, the ALJ

rejected the opinion of Treating Physician Jean-Maurice Page and accepted the

opinion of the medical experts. (Tr. 16). He also indicated that he took into account

the findings of the consultative examiner, Dr. B. Kidd. (Tr. 17). The question for

review, then, is whether this was appropriate.

Dr. Page and his associates provided long-term care for the plaintiff's back

condition. According to the orthopedic surgeon:

7

Pruitt

[The patient reportedly] fell on 7-2002 from a standing position.[1] She had constant pain in the lower back radiating into the right buttock region, left lower extremity and into the toes. She was seen in January [2003] in this practice for the first time. The MRI dated 12-23-02 revealed a larger disc herniation at L5-S1 causing severe narrowing of the right lateral recess and right neuroforamina. (Tr. 134). . .[A]t the time of [disc] surgery[, she was found] to have an acute cauda equina syndrome[2] with a large sequestered disc herniation at L5-S1. She underwent decompression of the cauda equina as well as a disc excision at that single level. . .

(Tr. 134).  In a follow-up letter two months later, he noted that:

Unfortunately [Pruitt] has redeveloped a herniated disc at that level with cauda equina type syndrome. She will require further surgery. . .and [it]. . . is expected to last for a period of 2 or 3 years before she gains MMI following the proposed surgery.  It is therefore felt that the patient has permanent restrictions. . .[such as] no stooping, squatting, bending, crawling, no lifting greater than 25 lbs and nothing of a repetitive nature. . .[W]ith a good surgical outcome it would be 2 years before she would be able to return to work and then she would have limits. . .

(Tr. 133). Progress notes from Page and his associates were also introduced, which

indicate that the plaintiff underwent her second surgery in October, 2003. (Tr. 195).

As of February, 2004, the patient still reported some bladder dysfunction and

exhibited weakness on the right S1 dermatome. (Tr. 223).  Page noted that he had

---

[1]A December 5, 2002 progress note from Dr. Rastogi indicates that the plaintiff continued to complain of constant back pain, which she traced back to an August, 2002 injury. (Tr. 118).

[2]Cauda equina syndrome is a dull, aching pain of the perineum, bladder and sacrum, generally radiating in a sciatic fashion, with associated paresthesias and areflexic paralysis, due to compression of the spinal nerve roots.  Dorland's Illustrated Medical Dictionary (27th Ed.) at pp. 1632.

been told by a neurologist that she continued to have marked neurological findings with residual bilateral L5-S1 radicular axonal loss. (Tr. 221).

Unfortunately for the agency, Page's opinion was not properly rebutted. The consultative examiner, Dr. Kidd, did not express an opinion about the plaintiff's residual functional capacity and indicated that the plaintiff did have continuing radiculopathy after her second surgery. Medical Reviewer Phillips' opinion was rendered prior to the development of the recurrent disc (Tr. 156) and, thus, did not address Page's opinion. Medical Reviewer Saranga really provided no rationale to discount Page's opinon except for a statement that his restrictions were projected (Tr. 164); however, Saranga's own restrictions were projected to a future date as well (Tr. 158). See Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).

While the ALJ's second hypothetical question was based on Page's restrictions, there were two problems with relying on this information from the vocational expert. First, Page (when reviewed in its full context) appeared to indicate that the plaintiff's period of disability would run from the original July, 2002 injury to two years following the second surgery of October, 2003. Second, a followup question indicated that the vocational expert may have misinterpreted Page's

9

Pruitt

restrictions, and in identifying specific jobs. (Tr. 265).

The case will be remanded for further consideration.

This the ___7___ day of September, 2006.

G. WIX UNTHANK
SENIOR JUDGE